Burke, J.
In this proceeding to compel an accounting, we are called upon to decide whether there was a sufficient repudiation by the fiduciary of his trust responsibility as to warrant the invocation of the defense of the Statute of Limitations to bar the petition.
*79 Decedent, a native of Russia, died intestate on August 1, 1951, a resident of New York County. Respondent-respondent (hereafter respondent), decedent’s nephew, applied for letters of administration claiming to be the sole distributee of the estate. Letters of administration were issued by decree of the Surrogate on March 24, 1952, and after a tax proceeding, distribution of the funds was made by respondent to himself as sole distributee. The Fidelity and Deposit Company of Maryland is surety on the administrator’s bond in the sum of $25,000. In 1960, when petitioners-appellants (hereafter appellants), decedent’s children and residents of the Soviet Union, learned of his death, they sought to make contact with respondent. After unsuccessful attempts to reach respondent, appellants retained their present counsel, who, in March of 1963, contacted counsel for respondent and a conference date for later that month was made.
The conference took place as scheduled on March 28, 1963 and the inferences to be drawn from that conference and subsequent correspondence between counsel are at the heart of this litigation. "When it became apparent to appellants that respondent was not going to account, this proceeding was commenced on October 29, 1969 for a compulsory accounting. Respondent’s answer pleaded the affirmative defenses of the Statute of Limitations and loches. The Surrogate directed respondent to account. The Surrogate noted that the conduct of the administrator’s attorney was “ entirely inconsistent ” with a claim of repudiation and, therefore, the Statute of Limitations had not begun to run. The defense of loches was also rejected by the Surrogate.
The Appellate Division, First Department, reversed, one Justice- dissenting. The majority found that a letter dated August 1, 1963 from appellants’ counsel to respondent’s attorney on its face evidenced a repudiation sufficient to start the Statute of Limitations. The majority found that the defense of loches was meritorious and, therefore, did not even reach the question of appellants’ status to maintain the instant proceeding. The dissent agreed with the Surrogate that the respondent failed to establish a repudiation and that the documentary evidence sustained the status of the petitioners.
*80 The order of the Appellate Division should be reversed and the order of the' Surrogate reinstated.
We reach this conclusion since we think that the repudiation by the fiduciary was somewhat less than unequivocal. The cases are clear that “ The statutory period * * * does not begin to run until the administrator has openly repudiated his Obligation to administer the estate.” (Matter of Jacobs, 257 App. Div. 28, 29 [emphasis supplied]; Matter of Menahan, 224 App. Div. 139; Matter of Ashheim, 111 App. Div. 176, affd. 185 N. Y. 609; Matter of Meyer, 98 App. Div. 7, affd. 181 N. Y. 553; Matter of Irvin, 68 App. Div. 158; cf. Matter of Wagner, 119 N. Y. 28.) It is also settled that for the trustee to set up the Statute of Limitations as a bar, mere lapse of time is not sufficient, but an act of repudiation is necessary (Matter of Ashheim, 111 App. Div. 176, affd. 185 N. Y. 609, supra). The question at hand then reduces itself as to whether there was a sufficient repudiation in the instant case as to warrant the application of the Statute of Limitations. If a repudiation is found, the governing Statute of Limitations is six years (CPLR 213, subd. 1).
The law requires proof of a repudiation by the fiduciary which is clear and made known to the beneficiaries (Ann., Limitation — Express Trust — Repudiation, 54 ALR 2d 13, 23) viewed in the light of the circumstances of the particular case. Mere listing in letters of administration by the administrator that he is the sole distributee, as in the instant case, is not sufficient to constitute a repudiation (Matter of Jacobs, 257 App. Div. 28, supra). However, the necessary repudiation was found by the Appellate Division from correspondence sent by appellants’ counsel to respondent’s attorney. Viewed in the context of the entire factual situation, we are not persuaded that the repudiation took place herein.
On March 8, 1963, the parties}’ counsel arranged for a conference which occurred on March 28. Respondent contends-that what transpired at the conference constituted the repudiation. Counsel for respondent testified as to the conversation at the conference: ‘ ‘ And that Mr. Barabash felt that he had finished this whole estate, he had no more to do with it and he didn’t want to do anything more about it. As far as he was concerned he wasn’t going to do anything more about this entire matter.” The letter dated August 1, 1963 was the ground upon *81 which the Appellate Division determined that a repudiation had taken place. In essence, the letter stated that if an informal accounting wasn’t coming within two weeks, resort to a compulsory accounting by appellants would be necessary. Had this been the end of the correspondence, we would agree with the Appellate Division that a repudiation had occurred. However, on September 9, 1963, counsel for respondent replied to the August 1, 1963 letter and hinted at a counter-settlement and requested further documentation as to appellants’ status to maintain the proceeding. Bight up until the time of the commencement of this proceeding, respondent’s attorney made several requests for further documentation. Thus, the issue is squarely before us: Does this conduct constitute a repudiation of trust responsibility?
The Appellate Division, in reversing the Surrogate, took the position that the Statute of Limitations commenced two weeks after the August 1 letter and that the statute was not tolled by the correspondence between counsel (see Rachlin & Co. v. Tra-Mar, Inc., 33 A D 2d 370). Necessarily, this secondary question of tolling can only be reached when it has been determined that the running of the Statute of Limitations had conimenced. In our view, the Appellate Division incorrectly determined that the Statute of Limitations started to run. Bather than going to the question of tolling, the actions of respondent’s counsel evince an equivocal course of conduct and fall far short of the clear act of open repudiation that our law mandates (Matter of Ashheim, 111 App. Div. 176, affd. 185 N. Y. 609, supra; Matter of Meyer, 98 App. Div. 7, affd. 181 N. Y. 553, supra). We conclude, therefore that the Statute of Limitations never commenced to run and that that defense is unavailable to the respondent.
Equally unavailable to respondent is the defense of loches. Laches is defined as such neglect or omission to assert a right as, taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity.” (2 Pomeroy, Equity Jurisprudence [5th ed.], § 419, pp. 171-172). The essential element of this equitable defense is delay prejudicial to the opposing party (Marcus v. Village of Mamaroneck, 283 N. Y. 325, 332). The facts are uncontroverted that the respondent *82 spent the funds well before the appellants even knew of or asserted their cause of action. Certainly, loches cannot be imputed to appellants who by their residence in the Soviet Union, were in our opinion, justifiably ignorant of the facts giving rise to the cause of action. (Cf. Manning v. Hyland, 19 A D 2d 652, 653; Restatement, 2d, Trusts, § 219, comment c; 30A C. J. S., Equity, § 128.) Furthermore, the essential element of loches, namely prejudice, is not spelled out by the mere lapse of time with all the “attendant consequences ” thereto afe respondent suggests. The funds were, dissipated several years after distribution and respondent has failed to affirmatively show any change of position prejudicial to him due to appellants ’ alleged delay in instituting suit. The defense of loches fails on another ground. Thus, a leading treatise on the law of trust states: “A fiduciary is not entitled to rely upon the loches of his beneficiary as a defense, unless he repudiates the relation to the knowledge of the beneficiary.” (5 Scott, Trusts [3d ed.], § 409, p. 3226.) Here, as stated earlier, the requisite repudiation was lacking.
One last point need be covered. Respondent contends that the documentary evidence offered to establish the relationship of appellants to decedent was improperly admitted in evidence and fails, in fact, to establish the relationship. The status of the appellants was proved to the satisfaction of the Surrogate but the Appellate Division expressly did not reach this question. For a copy of a foreign record to be admitted in evidence, CPLR 4542 sets forth the requirements of attestation and the genuineness of the signature of the attesting person. Those requirements were met in the instant case. Respondent’s contentions as to the reliability of the documents goes to the weight not the admissibility of the documents. (Sklar, Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 7B, CPLR 4542, pp. 516-517. See Gould v. Gould, 235 N. Y. 14, 24; 5 Weinstein-Korn-Miller, N. Y. Civ. Prac., ¶ 4542.03, pp. 45-434.) The documentary evidence supported the Surrogate’s finding that at least one of the appellants had standing as a ‘‘ person interested ’ ’ in the estate in order to seek an accounting (SCPA 2101, subd. 1, par. [a]).
Accordingly, the order of the Appellate Division should be reversed and the order of the Surrogate reinstated.
*83 Chief Judge Fuld and Judges Scileppi, Bergan, Breitel, Jasen and Gibson concur.
Order reversed and order of the Surrogates ’ Court reinstated, with costs to all parties appearing separately and filing separate briefs payable out of the estate.